

FILED & ENTERED

MAR 03 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>Robert Vilas Johnson<br>Linda Joyce Johnson<br><br><br><br><br><br>Debtor(s). | Case No.: 1:11-bk-18629-GM<br><br>CHAPTER 11<br><br>**MEMORANDUM OF DECISION CONVERTING CASE TO CHAPTER 7 UPON TRUSTEE'S MOTION FOR CONDITIONAL DISMISSAL OF CASE (Dkt. #556)**<br><br>Date:  March 1, 2017<br>Time: 1:00 p.m.<br>Courtroom:   302 |

Jeffrey Golden (the "Trustee"), as trustee of the chapter 11 estate of Robert Vilas Johnson and Linda Joyce Johnson (the "Debtors"), moves for entry of an order conditionally dismissing this chapter 11 case and allowing professional fees and expenses.  (For ease of reference, most numbers below are approximate.)

Service:  appears to be in order.  21-days' notice given to all creditors and parties on the Court's NEF list.

Background:

Mr. Johnson owned and operated (in part) IS West, an internet service provider. In February 2011, the California Superior Court entered a substantial judgment against Mr. Johnson and IS West in favor of Kenneth Cleveland and William Bickley (the "Judgment Creditors") relating to, among other things, a breach of contract. Shortly thereafter, Drew Kaplan (Mr. Johnson's business partner) commenced an arbitration proceeding against Mr. Johnson seeking damages arising out of Mr. Johnson's purported misconduct in his dealings with the Judgment Creditors.

On July 18, 2011, the Debtors filed for chapter 11 relief.  After two failed attempts by the Debtors to confirm a plan of reorganization, the court *sua sponte* ordered the appointment of a chapter 11 trustee.  Mr. Golden was appointed as chapter 11 trustee on November 14, 2012.  The Trustee has employed (each with court approval) Mirman, Bubman & Nahmias, LLP and then Baker & Hostetler, LLP ("Baker"), as counsel, and Crowe Horwath LLP ("Crowe"), as accountants.

Among other actions, the Trustee prevented a below-market sale of IS West (by a receiver appointed by the Superior Court for the benefit of the Judgment Creditors), sold IS West for approximately $3 million more, commenced a chapter 11 case for IS West, and confirmed a plan of reorganization for IS West – ultimately resulting in a distribution of nearly $1 million to this estate.  The Trustee also commenced an adversary proceeding against Mr. Kaplan (the "Kaplan Adversary") and objected to Mr. Kaplan's $8.6 million claim, resulting in the subordination of that claim.  The Trustee has

also proposed three plans of reorganization. The most recent, the Fourth Amended Plan

of Reorganization and Disclosure Statement, were filed on October 24, 2016. The

Fourth Amended Disclosure Statement was not approved at a December 6, 2016

hearing (on grounds of both disclosure and feasibility) and the hearing on this disclosure

statement has been continued until March 21, 2017.

      The principal remaining assets of the estate are:  (i) claims and causes of action

asserted against Mr. Kaplan in the Kaplan Adversary and (ii) $245,000 in cash.

      The unsecured claims against the estate are:

- Professional administrative claims (including projected fees through the closure
  of the case) of $290,000, consisting of $5,000 for the Trustee, $190,000 for
  Baker, and $95,000 for Crowe

- Other administrative claims (held by the IRS, the FTB, and the US Trustee) of
  $4,000

- Priority tax claims (held by the IRS and the FTB) of $210,000

- General unsecured claims of $657,000

- Mr. Kaplan's subordinated claim of $8.6 million and subordinated tax claims of
  $11,000

All secured claims relate to (i) the Debtors' residence, which the Trustee has

abandoned, or (ii) the Debtors' automobiles and have been satisfied.

      The following interim fees and expenses have been court approved and paid to

date:

- Mirman, Bubman & Nahmias - $36,000

- Baker - $309,000

- Jeffrey Golden, Trustee - $68,000 ($60,000 in fees and $8,000 in expenses)

<u>Motion</u>

After repeated attempts to confirm a plan of reorganization and two rounds of mediation with Judge Meredith Jury, the Trustee has concluded that dismissal of this chapter 11 case, subject to certain conditions, is in the best interests of the estate. These conditions are:

- approval of professional administrative claims,

- distribution of cash on hand to holders of administrative and priority claims,

- dismissal of the chapter 11 case and related adversary proceedings,

- affirmation of all orders issued in the chapter 11 case, and

- retention of jurisdiction by the Court to resolve certain disputes related to the chapter 11 case.

Such a dismissal will provide the greatest distributions to creditors in the circumstances.

Abandoning pending matters and dismissing the case will avoid the incurrence of additional administrative expenses.  Even if successful in the Kaplan Adversary, the Trustee has concerns about recovering from Mr. Kaplan. The Debtors do not appear to be willing to make the contributions required to fund the proposed plan.

Conversion to chapter 7 would add administrative expenses without any corresponding benefit and merely delay conclusion of this case.

Bankruptcy Code §§105(a), 305(a), and 1112(b) provide the Court with the authority to achieve the goals of bankruptcy in a conditional dismissal.  Dismissal is warranted under §§1112(b) and 305(a), as serving the best interests of creditors and the Debtors. It maximizes the amounts available to satisfy the claims of creditors and in doing so reduces the Debtors' overall debt.

Under §349(b) dismissal vacates any orders of this court, "[u]nless the court, for

cause, orders otherwise . . . ."  As the purposes of the Bankruptcy Code and interests of

creditors are best served by a structured dismissal, an order mooting §§349(b) is

warranted under §§105(a) and 349(b).

The Court should retain jurisdiction to resolve disputes concerning its orders in

this bankruptcy case, as it is in the best position to interpret and enforce its orders.

Seeking the guidance of other courts or reopening this case would entail substantial and

unnecessary expense and diminish the finality of the dismissal order.

The Court should approve the professional fees. Payment of administrative

claims of estate professional is warranted upon dismissal where, as here, the trustee

has rendered services that will unjustly enrich the debtor upon dismissal. The work of

the Trustee and his professionals resulted in the distribution of $1 million to this estate

from the estate of IS West.  The Trustee has also addressed and reduced substantial

tax liabilities. Finally, the Trustee and his professionals have substantially furthered the

potential claims against Mr. Kaplan, which the Trustee is abandoning to the Debtors.  If

the administrative professional claims are not paid, the Debtors will receive these

benefits without bearing any of the costs.

The Trustee is also in negotiations with his professionals to reduce the amount of

their fees.  Furthermore, although the Trustee has billed at his regular hourly rate in

excess of $400,000, he is recovering solely his statutory fee to which he is entitled

under §326.


United States Trustee's Objection

Bankruptcy Code §330(a)(1) authorizes the bankruptcy court to award to

professionals employed under §327(a) "reasonable compensation for actual, necessary

services" and "reimbursement for actual, necessary expense.  This authority includes the discretion, upon motion or *sua sponte*, to award less than has been requested. [This objection then lists "all relevant factors" (from §330(a) and case law) to be considered by the bankruptcy court in assessing "the nature, extent, and value of services rendered."]

A significant percentage of Crowe's compensation request includes entries for duplicative services, time lumping and objectionable overhead charges in violation of LBRs and other authority.

50% of the time Baker billed for the disclosure statement should be disallowed as not necessary or beneficial to the estate.  Further, Baker is seeking $15,000 of additional compensation incurred after filing the motion until dismissal of the case, without specifying the services to be rendered.

The US Trustee understands that the Trustee may have further objections to fees and is negotiating with the professionals.  Crowe and Baker have given the US Trustee additional time to supplement this objection if the US Trustee's concerns are not addressed.


Franchise Tax Board's Opposition

Section 330 allows professionals reasonable compensation for actual, necessary services that are reasonably likely to benefit the estate or are necessary to administration of the estate.  The applicant bears the burden of establishing entitlement to the compensation and reimbursement.

The Court cannot conclude that any structured dismissal is in the best interests of the estate, because the professional fees and expenses, and thus distributions to

creditors, are uncertain.

The Trustee's final fee application does not conform to the Federal Rules of Bankruptcy Procedure and the US Trustee Guidelines, by failing to submit contemporaneous time records and a narrative of the services performed.  The Trustee computes the requested compensation based on a percentage calculation under §326(a), but the Trustee is not automatically entitled to the statutory cap.

Baker has been paid fees and expenses under four interim fee applications. Baker's final fee application only covers services for the last period for which fees were sought, instead of all services performed in this case (contrary to the LBRs).  Baker also fails to arrange its fees and expenses by project category, which would enable creditors and the Court to evaluate the necessity and benefit of its services. Among other things, the FTB is concerned about the amount of time spent on chapter 11 plans, even though some plans were patently non-confirmable, the cost-benefit of pursuing claims against Kaplan, and duplicative work

Crowe's final fee application includes services not reasonably likely to benefit the estate and not necessary to the administration of the estate. For instance, 39.6 hours for "research and analysis" on cash disbursements, cash receipts, and the petition, schedules and case docket was unnecessary and not likely to benefit the estate in a case with only major asset.  Further, 24.8 hours for "research and analysis" supporting the Trustee's plan, including projected tax liability, was neither necessary nor beneficial where the plans did not contain any significant tax information.

The Court should deny this motion or continue it for six months to allow the FTB to conduct discovery. Any structured dismissal should state that the FTB may move all payments the FTB has received on estate tax liabilities to the Debtors' FTB individual

account so that such payments can be applied to the tax obligations that the debtor will

incur upon dismissal.

Debtors' Response

The Debtors were in possession of this estate for only sixteen months, while it

has been four years and three months since the Trustee's appointment.  The Trustee is

responsible for the progress of this bankruptcy case.

The Trustee received a deposit of $846,000 from the sale of the estate's largest

asset – 50% of IS West.  The professional administrative claims of $290,000 exceed the

$249,000 of remaining funds on hand by $45,000.  The Trustee and the Trustee's

attorneys have already received a substantial portion of this estate: Mirman, Bubman &

Nahmias - $36,000; Baker - $309,000; and the Trustee - $68,000.

The fees sought by Crowe are for duplicative and unnecessary work.

The US Trustee and the FTB's oppositions sufficiently address the issues

regarding the professionals' claims, although the Debtors believe denying the motion or

continuing this hearing for discovery will only lead to further cost and delay.

This Court has discretion in approving conditions to dismissal.  The Debtors ask

the Court to use the discretion to apportion the remaining $249,000 among non-

professional administrative claims, priority unsecured claims, and nonpriority unsecured

claims, or convert this case to a chapter 7.

Omnibus Reply by the Trustee

The Trustee has worked diligently throughout this case.  Despite numerous

successes, Mr. Johnson's announcement that he intended to retire has left the Trustee

with few options: conversion or the proposed conditional dismissal.  The conditional dismissal best serves the interests of the estate and creditors because it avoids the additional administrative expenses that would be created by conversion.

The US Trustee's objection has been resolved by stipulation: Baker has agreed to reduce fees and expenses by $20,000 and Crowe has agreed to accept $50,000 on account of services rendered to the estate.  Baker has also agreed to file billing statements for all fees and expenses for the period between January 28, 2017 and the hearing.  As a result, the US Trustee has agreed to withdraw the US Trustee Objection.

In addition to this reduction in professional fees, the estate is presently amending its tax returns, which the Trustee understands will result in a tax refund to the estate of $40,000-$60,000.

The FTB Opposition lacks merit:

- The amount of distributions is not unknown.  Due to the reductions agreed to by Baker and Crowe, priority creditors will receive approximately $15,000.  The Trustee anticipates making a second, larger distribution to priority creditors after receiving the tax refund.

- **Trustee Fees:** The Trustee's compensation under §326 is not based on hours worked, but is a commission based on distributions.  The US Trustee Guidelines are not applicable to commissions and, in any event, are internal guidelines not binding on the Court.

- **Baker Fees:** The Trustee incorporated by reference Baker's interim fee applications, to avoid the expenditure of further fees and expenses in this case.  There is no need for a final fee application. The billing invoices comply with the US Trustee Guidelines, which is the reason why the US Trustee has not objected

to the form of the invoices.  As to the reasonableness of the fees and expenses incurred, the Court should be careful to avoid using hindsight to second guess actions of counsel.  Fees are not unreasonable simply due to the length of time the Trustee has been involved or the changes in approach necessitated by changes in facts (like Mr. Johnson's retirement decision) and/or law (like the Ninth Circuit decision in *Zachary v. California Bank & Trust*, 811 F.3d 1191 (9th Cir. 2016), that the absolute priority rule applies to individual debtors) or the failure of negotiations.  Fees incurred in objecting the Kaplan's claim were reasonable:  they led to the subordination of the claim. The FTB argues that Baker's work was duplicative of that or the Trustee or Crowe, without offering any substantiation.

- **Crowe Fees:** Crowe has agreed to reduce its requested fees by approximately $45,000 (almost 50%), which addresses any potential deficiencies in its fee request.

- There is no cause to continue the hearing on this motion for six months, which would only increase administrative expenses and benefit no one.

The Debtors' request that the Court alter the distribution scheme to apportion the remaining $249,000 in the estate among the non-professional creditors violates the priority scheme of §507, and is thus impermissible.  It is also unfairly prejudicial to the Trustee and his professionals who have worked diligently in an effort to realize a tangible benefit for creditors. While the Trustee had envisioned a different result for this chapter 11, the Trustee's failure to confirm a plan was due to circumstances beyond the Trustee's ability to control.

Tax Issue Supplements

At the initial February 21, 2017 hearing on this motion, counsel for the Debtors

and counsel for the FTB argued that dismissal of this case would have negative tax

implications for the Debtors. In order to better understand this tax issue prior to ruling on

this motion, the Court issued a request for succinct statements regarding this tax issue

[dkt. 568].

The Debtors submitted a declaration of their accountant stating, among other

things, that

> 8.    The individual Debtors deductions allowed under IRS regulations are
> vastly different, and far more limited, than those allowed administratively on
> Estate returns. The Debtors will be required to assume substantial additional
> taxes totaling as much as several hundred thousand dollars if the case is
> dismissed.
> 9.    In addition to the significant increased tax liability, the Debtors will also be
> required to pay the expense of preparing and filing 5 years of amended tax
> returns, which will be very expensive.
> 10.    There is no way to determine the total impact of these changes without
> further costly analysis and comparison of existing Federal and State Estate
> returns with amended Estate returns to those of the Debtors individually.
> 11.    However, it is apparent to me that if this case is dismissed, the Estate tax
> returns will no longer be controlling by operation of law, the refunds claimed by
> the Estate will no longer be available, and instead the Debtors will have
> significant taxable income from over the past five years, including the sale of the
> assets of IS West, and far more limited deductions, than those deductions
> allowed administratively on the Estate amended returns.
> 12.    As such, it is unlikely that a dismissal will better serve the interests of
> either Creditors or the Debtors, and dismissal will saddle the Debtors with
> substantial tax liabilities, which will remain unsecured priority debts.
> 13.    If this case is converted to Chapter 7, the Estate will continue to exist for
> tax purposes, and the amended Federal and State returns already filed by the
> Chapter 11 Trustee, will remain controlling, with all of the deductions claimed
> administratively on Estate amended tax returns, and including the refunds
> claimed by the Estate.

[Dkt. 573]  The FTB's supplement concludes that

> First, if this Court grants the Motion and dismissal, for tax purposes, the
> Estate and Debtors will be treated as if no bankruptcy had ever been filed and
> Debtors' post-petition tax liabilities will be higher. In 2014, the Trustee paid FTB
> $52,457 for administrative expenses on account of the Estate's post-petition tax

liabilities and in response to Internal Revenue Service's ("IRS") pending motion to dismiss. Upon dismissal, the income of the Estate will become income of the Debtors (26 U.S.C. § 1398(b)(1)) but Debtors will not be able to deduct administrative expenses that were incurred by the Estate (26 U.S.C. § 1398(h)(2)(D)). Based upon FTB's preliminary analysis of Debtors' 2014 tax return, a dismissal will result in tax liabilities for Debtors in the amount of $90,970.2   Thus, the tax implications of a dismissal do not better serve Debtors. This also may not better serve FTB. More specifically, the tax liabilities owed to the FTB would be changed from a situation in which the Estate's tax liabilities are paid in full to a situation in which Debtors have liabilities but no assets to pay those liabilities.

Second, on or about February 18, 2017, the Trustee filed amended tax returns with FTB and IRS for tax refunds. Dkt No. 567, Exs. 1, 2. However, this Court may not determine the right of the Estate to a tax refund for 120 days after the requests (June 18, 2017), unless FTB or IRS makes a determination sooner. 11 U.S.C. § 505(a)(2)(B). Thus, this Court cannot yet determine the right of the Estate to a tax refund.

Given this uncertainty, if the Court orders a dismissal, in order to protect FTB, FTB requests that the dismissal order state that FTB may move all payments it has received for the Estate's tax liabilities to Debtors' individual FTB account for the same tax year. FTB will then be able to apply such payments to Debtors' tax liabilities, which will be incurred as a result of the dismissal.

[Dkt. 569 at 2:17-3:16]

The Trustee's supplement does not really address the tax effects on the Debtors of a dismissal, but does argue that dismissal would better serve the interests of the FTB.

[U]nder the proposed conditional dismissal as modified per the FTB's request, the FTB would receive payment on account of the Estate's tax liabilities and then would be authorized to credit these amounts to the Debtors' liabilities. In other words, the FTB would receive the exact same amount. Moreover, even if the Trustee were not agreeable to this proposal, if the concerns articulated by the FTB are accurate, in that the Debtors may not get the benefit of certain payment and/or deductions made by the Estate, the FTB has the potential to recover twice on account of the same claim.  In fact, the only certainty if the Bankruptcy Case is dismissed is that a portion of the tax liability the Trustee is proposing to satisfy by and through the Motion will be discharged, and more administration expenses will reduce payment to the FTB on account of the liability that is not discharged.

[Dkt. 574 at 3:25-28].

In his supplement the Trustee also argues that it was the Debtors – not the Trustee – who had wanted to move forward with a conditional dismissal (which was

-12-

strongly advocated by Judge Jury in mediation), so the Trustee prepared this motion.

He also argues that the Debtors' initial response to this motion did not oppose the

proposed dismissal and that the FTB has no standing to present arguments on behalf of

the Debtors.  Further, while §305(a) involves consideration of the interests of both

debtors and creditors, the Trustee also moved for dismissal under §1112(b), which

requires only cause.

   (The bulk of the FTB's supplement and the Trustee's supplement concern

numerous objections that the FTB has made to the fees of the Trustee's counsel.

These arguments will be considered when the Court reviews the fees and expenses of

the Trustee and his professionals under §330.)

**Analysis**

   It has become clear to the Court and all active parties in this case that this

chapter 11 cannot continue.   No plan of reorganization appears possible and

continuation of this case results only in increased administrative expenses.  The

question is how this chapter 11 should end: by conversion or dismissal?

   The Motion seeks a conditional dismissal (more commonly known as a structured

dismissal), pursuant to §§105(a), 305(a), and 1112(b). Section 1112(b) provides for

dismissal or conversion "for cause" with the choice of conversion or dismissal based on

"whichever is in the best interests of creditors and the estate."  Section 305(a) allows

the court to dismiss a case if "the interests of creditors and the debtor would be better

served by such dismissal ….."  The Court must find that a §305(a) dismissal would

better serve both creditors and the debtor. *In re Eastman*, 188 B.R. 621, 625 (B.A.P. 9th

Cir. 1995).

1
2
3
4
5
6

Rather than a typical dismissal's "hard restart" of reinstating the pre-petition state of affairs pursuant to §349(b), a structured dismissal of a chapter 11 is preceded by orders of the bankruptcy court that remain in effect after the dismissal.  Structured dismissals often follow an asset sale or major settlement and, although increasingly used, they remain controversial:

7
8
9
10
11
12

> Two notable opponents of structured dismissal are the United States Trustee ("UST") and the American Bankruptcy Institute. In the wake of the growing popularity of structured dismissals, the UST co-authored and published an article that delineated several objections to such dismissals. The UST primarily argued that structured dismissals fail to afford parties with the protections provided in a standard confirmation process and therefore "strongly resemble impermissible sub rosa plans." Additionally, the American  Bankruptcy Institute's Commission to Study the Reform of Chapter 11 released a lengthy report suggesting that Congress amend the Code to clarify that structured dismissals are impermissible.

13
14
15

Kaylynn Webb, Comment, *Utilizing the Fourth Option: Examining the Permissibility of Structured Dismissals That Do Not Deviate from the Bankruptcy Code's Priority Scheme*, 33 Emory Bankr. Dev. J. 355, 357–58 (2016).

16
17
18
19
20
21

Although not explicitly authorized by the Bankruptcy Code, structured dismissals (under §1112(b) and/or §305(a)) have been found to be implicitly authorized under §349(b) (which allows a court "for cause" to depart from the normal effects of dismissal as spelled out in §349(b)) in a number of recent decisions, including one by the Third Circuit:

22
23
24
25
26
27
28

> [T]he Code does not expressly authorize structured dismissals. And as structured dismissals have occurred with increased frequency, even commentators who seem to favor this trend have expressed uncertainty about whether the Code permits them. As we understand them, however, structured dismissals are simply dismissals that are preceded by other orders of the bankruptcy court (e.g., orders approving settlements, granting releases, and so forth) that remain in effect after dismissal. And though § 349 of the Code contemplates that dismissal will typically reinstate the pre-petition state of affairs by revesting property in the debtor and vacating orders and judgments of the bankruptcy court, it also explicitly authorizes the bankruptcy court to alter the effect of dismissal "for cause"—in other words, the Code does not strictly require dismissal of a Chapter 11 case to be a hard reset. 11 U.S.C. § 349(b); H.R. Rep. No. 595 at 338, 1978

U.S.C.C.A.N. 5963 at 6294 ("The court is permitted to order a different result for cause."); *see also Matter of Sadler*, 935 F.2d 918, 921 (7th Cir.1991) (" 'Cause' under § 349(b) means an acceptable reason.").

*In re Jevic Holding Corp.*, 787 F.3d 173, 181 (3d Cir. 2015), as amended (Aug. 18, 2015)(citations to the record omitted), *cert. granted sub nom. Czyzewski v. Jevic Holding Corp.,* 136 S. Ct. 2541 (2016))(cert. granted on the question of whether, through a structured dismissal, the court can approve a distribution of the estate in contravention of the Code's priority scheme).

However, it is important to note that the Third Circuit's conclusion that structured dismissals are permissible was limited to situations where the dismissal is not used to circumvent the plan process or conversion to chapter 7:

> For present purposes, it suffices to say that absent a showing that a structured dismissal has been contrived to evade the procedural protections and safeguards of the plan confirmation or conversion processes, a bankruptcy court has discretion to order such a disposition.

*Jevic*, 787 F.3d at 182.  In fact, a recent bankruptcy court decision refused to approve a structured dismissal where, as here, a chapter 7 was possible, albeit more expensive:

> Here, the Motion, while passing the "practicality" test, must be denied because the structured dismissal seeks to alter parties' rights without their consent and lacks many of the Code's most important safeguards. It is well-established that § 105 may not be invoked to provide relief that contradicts the express requirements of the Code. *See In re Combustion Eng'g, Inc.,* 391 F.3d 190, 286 (3d Cir.2004) ("The general grant of equitable power contained in § 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself."). Even if a structured dismissal would result in more assets being made available to the creditor body, such relief may not be approved without assurances that creditor protections provided by confirmation or liquidation pursuant to § 1129 or dismissal or conversion pursuant to § 1112(b) are either present or waived by all parties. If a chapter 11 case could be dismissed solely to avoid additional expenses associated with liquidating the estate, parties would rarely, if ever, convert to chapter 7 and the conversion option in section 1112(b) would essentially be rendered superfluous. Section 105 cannot be interpreted to create the authority for this result. *See Resorts Int'l v. Lowenschuss (In re Lowenschuss),* 67 F.3d 1394, 1402 (9th Cir.1995) ("Section 105 does not authorize relief inconsistent with more specific law."); *United States Trustee v. Price Waterhouse,* 19 F.3d

138, 142 (3d Cir.1994) ("[B]ankruptcy courts cannot use equitable principles to disregard unambiguous statutory language.") (quoting *In re Middleton Arms L.P.,* 934 F.2d 723, 725 (6th Cir.1991)).

If, as the Trustee asserts, the estate lacks the funds needed to confirm or liquidate under chapter 11, section 1112(b) provides that the case may be dismissed outright or converted to chapter 7 and liquidated under the supervision of a chapter 7 trustee. If the case is dismissed, all parties' pre-petition rights and interests are restored. If the case is converted, the chapter 7 trustee protects creditors' rights by accounting for estate assets, issuing a final report that addresses liquidated assets, claims quantified, and distributions proposed, and distributing assets pursuant to the final report. Thus, under conversion or dismissal under § 1112(b), all parties to the bankruptcy proceeding are assured that their interests are accounted for and preserved.

*In re Biolitec, Inc.,* 528 B.R. 261, 269 (Bankr. D.N.J. 2014); *see also In re Petersburg Regency LLC*, 540 B.R. 508, 532 (Bankr. D.N.J. 2015)(allows structured dismissal, but notes "there is no possibility for a distribution to unsecured creditors without a settlement, and no realistic possibility of a reorganization or conversion to Chapter 7"). *But see In re Buffet Partners, L.P.,* 2014 WL 3735804, at *3 (Bankr. N.D. Tex. July 28, 2014)("the economic value of the Debtor in this case will be served by dismissing the case, rather than converting it. Converting this case to chapter 7 would interfere with prompt and efficient payment to creditors"). Thus, the Court is reluctant to grant the non-statutory remedy of a structured dismissal when conversion to chapter 7 remains possible (albeit more expensive) – for the reasons set forth by the New Jersey Bankruptcy Court in *Biolitec.*

That general reluctance is magnified in this case, which involves individual debtors. The Court is not aware of any cases approving a structured dismissal for an individual debtor: a Westlaw search for bankruptcy cases containing the phrases "conditional dismissal" or "structured dismissal" found structured dismissals only being proposed in *corporate* bankruptcies. Dismissal – as opposed to conversion to chapter 7 - means that the debtor will not receive a discharge. The lack of a discharge is not

relevant in the bankruptcy of a corporation, which cannot receive one in chapter 7. In

contrast, the failure to obtain a bankruptcy discharge places a burden – often a very

heavy burden – on individual debtor[s].

In this case, in a dismissal the Debtors would remain liable for the unpaid portion

of the $210,000 of priority tax claims, the full amount of general unsecured claims

($656,643 according to this motion, which presumably includes the Judgment Creditors'

remaining $350,000 claim), and the full $8.6 million of subordinated unsecured claims

(comprised primarily of Mr. Kaplan's claim). In a chapter 7, by contrast, while the unpaid

portion of $210,000 of priority tax claims would most likely be both larger - due to

chapter 7 administrative expenses - and non-dischargeable under §523(a)(1), the

Debtors would be discharged from over $9 million of general and subordinated debt.

Thus, the proposed dismissal would deny the Debtors with the "fresh start" that is one of

the major policy goals of the Bankruptcy Code.

A dismissal will also leave the Debtors with a heavy tax burden. Upon dismissal,

the income of the estate will become the Debtors' income, but the Debtors, unlike the

Trustee, will not be able to deduct the estate's administrative expenses:

> INDIVIDUALS IN CHAPTER 7 OR 11
> During the chapter 7 or 11 bankruptcy, the debtor continues to file an individual
> tax return on Form 1040. The bankruptcy trustee files a Form 1041 for the
> bankruptcy estate.

PUBLICATION 908 BANKRUPTCY TAX GUIDE, 2012 WL 6553969, at *5.

> CONVERSION OR DISMISSAL OF CHAPTER 11 CASES.
> If the chapter 11 case is converted to a chapter 7 case, [t]he property of the
> chapter 11 estate will become property of the chapter 7 estate. Any income on
> this property will be taxed to the estate even if the income is realized after the
> conversion to chapter 7. If a chapter 11 case is dismissed, the debtor is treated
> as if the bankruptcy case had never been filed and as if no bankruptcy estate had
> been created.

*Id.* at *9–10; *see* 26 U.S.C. §1398. Aside from the taxes themselves, the expense of

preparing five years of tax returns would be another substantial cost to the Debtors from

dismissal. The Trustee has not attempted to refute this conclusion by the FTB and the

Debtors' accountant that the proposed conditional dismissal would leave the Debtors

with a substantial increased tax liability. Even the risk of this outcome is an

unacceptable burden on the Debtors.

Furthermore, this result is completely inequitable. To date, the administrative

creditors (the professionals) have been the beneficiary of all income of the estate.

Under the proposed conditional dismissal, the professionals (and possibly a small

amount of priority tax claims) will receive the remaining cash in the estate.  The Debtor,

however, will be left with a substantial tax burden that arose from that income. For

example, the Trustee has recently filed tax returns showing entitlement to refunds,

which he plans to distribute pursuant to the structured dismissal. When the Debtors file

tax returns for the same period, they will probably be obligated to pay taxes rather than

entitled to receive a refund, due to their more restricted deductions.  In essence, the

Trustee proposes that he, his professionals, and possibly some priority tax claims be

paid from the tax refund that the Debtor will, at least in part, subsequently need to repay

to the taxing authorities.

On the other hand, the only real advantage of a structured settlement over

conversion to a chapter 7 is avoiding the cost and delay of a chapter 7.  However,

administrative creditors and possibly tax priority creditors would be the only parties to

benefit from the net savings realized from dismissal instead of conversion. The

unsecured creditors are completely out of the money and will not receive any

distribution from this estate under either scenario.

The Motion argues that these unsecured creditors – who could pursue their

remedies after dismissal - would be benefited by the reduction in the overall debt. However, given the prospects of recovering from a couple of individuals who are without any substantial assets that are clearly non-exempt and who are on the verge of retirement, a small reduction in claims would have little effect on unsecured creditor recoveries.

The Trustee has also argued that the unsecured creditors would benefit from retaining their remedies against the Debtors, but this is merely the "flip side" of the Debtors' failure to obtain a discharge. The Trustee and Mr. Bickley argue that Mr. Johnson is not a "good guy" and should remain liable on his obligations. But being a good person is not the standard for receiving a discharge. The Bankruptcy Code has a presumption in favor of discharge: Debtors are entitled to receive a discharge unless one of the exceptions of §523(a) or §727(a) is shown to apply. (So, while it will be an additional cost to the Judgment Creditors to refile their action and establish that the Debtors' $350,000 obligation to them is nondischargeable under §523(a), that is how the Code is meant to work.)  The Court will not grant this motion, essentially rendering all of the Debtors' obligations nondischargeable, based on the general notion that Mr. Johnson is not a good guy.

Furthermore, the creditors would not likely keep this advantage of nondischargeability for any length of time. Dismissal would not bar the Debtors from re-filing in chapter 7 and the Debtors' continued liability on millions of dollars of debt without realistic prospects of repayment make a new chapter 7 almost inevitable.  The creditors (including the Judgment Creditors) would then have to bring a nondischargeability action anyway.  The only differences between a conversion to chapter 7 now and a dismissal plus a new chapter 7 are: the dismissal plus new chapter

7 will result in additional, substantial tax liability for the Debtors and will allow the professionals to avoid being subordinated to the administrative expenses of the chapter 7.

Conclusion

The only real advantage of dismissal - the savings of chapter 7 administrative expenses - is outweighed by the heavy burden on the Debtors – heavy undischarged debt and inequitable tax liability of an unknown, but substantial, amount. Further, despite the Trustee's invocation of benefit to the creditors, the only creditors to realize any benefit from the savings of avoiding chapter 7 are the professionals themselves and possibly the FTB and the IRS.

The Debtors may have favored dismissal prior to understanding its implications for them, but that does not justify a dismissal in these circumstances.  Whether or not these issues were raised by the Debtors or the FTB, the Court has a mandate to consider the Debtors' interests under §305(a).  Under §1112(b), the heavy and inequitable burdens facing the Debtors in a dismissal cannot be ignored by this court of equity.

This conclusion is buttressed by the uncertain state of the law on structured dismissals, which do not have an explicit statutory basis and are disfavored by the ABI Commission on chapter 11 reform.  A circuit court of appeals has recently approved a structured dismissal, but the court pointedly left this very situation – where chapter 7 remains a viable option – out of its approval. In sum, this case does not present the compelling facts that might induce the Court to approve the controversial remedy of a structured dismissal, much less to extend it to a case involving individual debtors,

thereby effectively denying the Debtors a discharge.

This chapter 11 case shall be converted to chapter 7, for cause shown under §1112(b)(4)(a), pursuant to an order entered in conjunction with this Memorandum of Decision.

###

Date: March 3, 2017

_____
Geraldine Mund
United States Bankruptcy Judge